HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HOSSEIN TAVAKOLI, et al.,

    Plaintiffs,

  v.

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,

    Defendant.

CASE NO. C11-1587RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on the parties' motions for partial summary judgment. Although the parties have requested oral argument, the court finds oral argument unnecessary. For the reasons stated below, the court DENIES Plaintiffs' motion for partial summary judgment (Dkt. # 33) and GRANTS in part and DENIES in part Defendant's motion for partial summary judgment (Dkt. # 35). This order concludes with instructions for the parties to prepare for trial, which will begin on January 28, 2013.

## II. BACKGROUND

In October 2007, Jason Koehne drove his car into a car that Plaintiff Hossein Tavakoli was driving. Mr. Tavakoli's wife, Plaintiff Pourandok Shahnian, was a passenger. No one disputes that the accident injured Mr. Tavakoli. So far as the record reveals, Ms. Shahnian suffered no injuries.

ORDER – 1

Defendant Allstate Property and Casualty Company ("Allstate") was Mr. Tavakoli's car insurance provider. Mr. Tavakoli quickly notified Allstate about the accident. Almost as quickly, Mr. Tavakoli hired a lawyer. Within three days of the accident, the lawyer told Allstate not to communicate directly with Mr. Tavakoli. That initial conduct marked the beginning of more than three years in which Mr. Tavakoli's lawyer severely limited Allstate's ability to investigate Mr. Tavakoli's claim. The lawyer refused to allow Allstate to interview Mr. Tavakoli regarding the accident, offering only an unfulfilled promise to submit a written statement from Mr. Tavakoli regarding the accident.[1] The lawyer also declined to provide releases that would have allowed Allstate to obtain Mr. Tavakoli's medical records. Wyche Decl. (Dkt. # 37) ¶ 8 & claim diary.

Until December 2010, Allstate received only what limited information Mr. Tavakoli's lawyer chose to reveal. Allstate knew soon after the accident that the lawyer was attempting to recover damages from Mr. Koehne and his insurance carrier, USAA. By March 2008, it knew that Mr. Tavakoli claimed to have suffered injuries that were severe enough that he could not give a recorded statement to Allstate. In October 2008, it learned that the lawyer had reached a settlement with Mr. Koehne for $25,000, which the lawyer represented to be the limits of Mr. Koehne's USAA policy. At that point, the lawyer disclosed more about Mr. Tavakoli's injuries, informing Allstate that he had suffered a closed head injury and spinal injuries, had seen a variety of medical providers, and was continuing medical treatment. At the time, Mr. Tavakoli's medical expenses were about $23,000. The lawyer declined to authorize Allstate to review Mr. Tavakoli's medical records, and instead informed Allstate that he would provide documentation when he sent a demand letter. Allstate acknowledged the settlement, declined to exercise

---

[1] In recounting the events from October 2007 to December 2010, the court relies heavily on Allstate's chronological claim diary. Wyche Decl. (Dkt. # 37), Ex. B. The court notes that the lawyer who represented Mr. Tavakoli throughout this period is counsel of record in this litigation. Despite ample incentive to present evidence contrary to Allstate's account, the lawyer has not submitted a declaration. Throughout this order, where the court recounts an event but does not cite the evidence supporting it, the evidence is likely in the claim diary.

ORDER – 2

its right to pursue Mr. Koehne directly, and encouraged the lawyer to contact Allstate at any time to discuss the claim.

After the 2008 settlement, Allstate contacted the lawyer at least 15 times. Allstate checked with the lawyer every few months, inquiring about the claim and requesting medical records and other documentation. Generally speaking, the lawyer refused to provide documentation, insisting that he would include medical records and other documents only when he compiled a demand letter. The lawyer revealed limited information to Allstate. Allstate received a copy of the police report regarding the accident in November 2008, although it is not clear if the lawyer provided it. From the police report, Allstate determined that Mr. Tavakoli was likely not at fault in the accident. Allstate complied with the lawyer's request for certified copies of Mr. Tavakoli's policy (the "Policy"). In February 2009, the lawyer told Allstate that Mr. Tavakoli was still treating with various medical providers. In June 2009, the lawyer made an oral demand for $250,000, the limit of the Policy's uninsured motorist ("UIM") coverage.[2] He claimed that Mr. Tavakoli had suffered permanent neurological damage, that he was having "aggressive outbursts" that had left his family life "in shambles." He stated that Mr. Tavakoli ran a restaurant, that business was suffering, and that Mr. Tavakoli's wife was struggling to keep the business afloat. Allstate asked him to document any business losses, and he agreed to do so.

The June 2009 conversation demonstrated to Allstate that Mr. Tavakoli was likely to assert a substantial UIM claim. Allstate began considering possible defenses that Mr. Koehne might have been able to assert against Mr. Tavakoli. It considered whether the police report suggested a basis for holding Mr. Tavakoli partially at fault. It considered

---

[2] Many car insurance policies contain a personal injury protection coverage that covers damages, including medical expenses, arising from an accident. Mr. Tavakoli declined this coverage; it was not part of his Allstate policy.

ORDER – 3

sending an investigator to observe Mr. Tavakoli at his restaurant. So far as the record reveals, Allstate never took any action beyond these discussions.

Meanwhile, Allstate remained largely in the dark about Mr. Tavakoli's injuries and other damages. In October 2009, two years after the accident, the lawyer told Allstate that it should not expect a demand letter soon, and that Mr. Tavakoli continued his medical treatment. The lawyer demanded that Allstate stop contacting him so frequently. Allstate complied.

In December 2010, more than three years after the accident, Mr. Tavakoli's lawyer sent his first demand letter. Wyche Decl. (Dkt. # 37), Ex. C (Dec. 6, 2010 letter). It listed both chronic and acute diagnoses and described acute and long-term treatment that Mr. Tavakoli had received. The letter claimed just over $30,000 in medical expenses. It also claimed that Mr. Tavakoli would require unspecified "ongoing management and care" for the rest of his life. Among other physical manifestations of Mr. Tavakoli's injuries, the letter listed "erectile problems, decreased libido, depression, memory difficulties, and agitation." It claimed that the accident had "completely changed Mr. Tavakoli's personality." It said that the accident had caused "marital problems and strain on his relationship with his wife." The letter did not name Mr. Tavakoli's wife and did not advance any claim on behalf of his wife. The letter also did not point to any lost wages or business-related expenses. The letter attached medical records to support Mr. Tavakoli's claims, along with the police report from the accident. Allstate wrote the lawyer two days later, acknowledging his demand letter. In January 2011, it asked for a few missing medical records. The lawyer agreed to provide them.

By early January 2011, the Allstate adjuster assigned to Mr. Tavakoli's claim had evaluated the demand letter and medical records. He calculated total medical bills at just under $30,000, and guessed that damages might reach $100,000, minus a $25,000 offset for the payment from USAA. After considering additional records, he revised his

ORDER – 4

estimate in February 2011, asking for authority to settle the claim for a maximum payment of about $80,000, consisting of about $30,000 in medical expenses, $75,000 in general damages, minus the $25,000 offset.

In February 2011, Allstate offered to pay Mr. Tavakoli just under $48,000 in addition to the $25,000 he had already received from USAA. The same month, the lawyer wrote back reasserting his policy-limits demand. Wyche Decl. (Dkt. # 37), Ex. D (Feb. 22, 2011 letter). This time, he threatened to file suit, invoking the Insurance Fair Conduct Act ("IFCA," RCW Ch. 48.30). Again, he made no suggestion that Mr. Tavakoli's wife had a claim. He made no suggestion that lost wages or other business-related expenses were among the damages he was claiming for Mr. Tavakoli.

In March 2011, Allstate offered to pay Mr. Tavakoli about $55,000 in addition to the $25,000 he had already received from USAA. Mr. Tavakoli's response was to hire another lawyer, who the court will refer to as "litigation counsel." When litigation counsel informed Allstate of its appearance in the litigation, he named Mr. Tavakoli alone as his client and did not suggest that Ms. Shahnian had a claim. Wyche Decl. (Dkt. # 37), Ex. F (Mar. 23, 2011 letter). Litigation counsel wrote Allstate in April 2011, notifying both Allstate and the office of Washington's Insurance Commissioner that he intended to file a suit invoking IFCA. Wyche Decl. (Dkt. # 37), Ex. H (Apr. 7, 2011 letter). The April 2011 letter was remarkable because it was the first time anyone suggested that Ms. Shahnian was bringing a claim. The letter did not explain what her claim might be.

In June 2011, litigation counsel wrote Allstate to demand an immediate payment of "the amount you believe to be appropriate to compensate [Mr. Tavakoli] and his wife." Wyche Decl. (Dkt. # 37), Ex. I (Jun. 18, 2011 letter). The letter did not demand a specific amount, it simply pointed to Allstate's determination that "Mr. Tavakoli is entitled to some payment under the UIM policy . . . ."

ORDER – 5

1     Other than some unsuccessful attempts to schedule an independent medical examination ("IME") for Mr. Tavakoli, little happened after the June 2011 letter.  In late August, Plaintiffs filed this lawsuit.  They claimed that Allstate breached the Policy, acted in bad faith, violated the Washington Consumer Protection Act ("CPA," RCW Ch. 19.86), and violated IFCA.   In early September 2011, Allstate turned this dispute over to its own litigation counsel.

### III.  ANALYSIS OF SUMMARY JUDGMENT MOTIONS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party in resolving purely legal questions.  *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

The parties' summary judgment motions seek determinations as a matter of law on the following issues:

1) Both Plaintiffs and Allstate seek summary judgment that Allstate did (or did not) violate the law by failing to disclose to Ms. Shahnian that she had a potential claim for loss of consortium and failing to investigate that claim.

ORDER – 6

2)      Both Plaintiffs and Allstate seek summary judgment that Allstate did (or did not) violate the law by failing to make a partial payment to Mr. Tavakoli for undisputed medical expenses or damages.

3)      Allstate seeks summary judgment that it is not liable for anything it did between the October 2007 accident and the first demand letter Mr. Tavakoli's lawyer sent in December 2010.

4)      Allstate seeks summary judgment that it did not violate the law by failing to disclose to Mr. Tavakoli that he had a claim for lost wages.

5)      Allstate seeks summary judgment that Plaintiffs cannot use IFCA to recover their damages arising from the accident (as opposed to damages arising out of Allstate's claims handling).

In this case, the inquiry into whether Allstate violated the law is an inquiry into whether it either breached the Policy, acted in bad faith, or violated the CPA or IFCA. Bad faith claims, insurance-related CPA claims, and IFCA claims are similar. An insured's assertion of bad faith against her insurer is a tort claim. *Safeco Ins. Co. of Am. v. Butler*, 823 P.2d 499, 503 (Wash. 1992). A denial of coverage is in bad faith if it is unreasonable, frivolous, or unfounded. *Overton v. Consolidated Ins. Co.*, 38 P.3d 322, 329-30 (Wash. 2002). Violation of Washington's insurance regulations is evidence of bad faith. *See Coventry Assocs. v. Am. States Ins. Co.*, 961 P.2d 933, 935 (Wash. 1998). Because Washington has declared that insurance impacts the public interest, an insured establishes a CPA violation when it proves injury to its business or property as a result of an act in bad faith. *See Overton*, 38 P.3d at 330 (citing RCW § 19.86.020); *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998) ("[T]he business of insurance affects the public interest . . . ."); RCW § 48.01.030 (declaring that "[t]he business of insurance is one affected by the public interest"); *see also Indus. Indem. Co. of the N.W. v. Kallevig*, 792 P.2d 520, 530 (Wash. 1990) (holding that a single violation of WAC § 284-30-330 is

ORDER – 7

sufficient to support a CPA violation). Unlike the CPA, IFCA targets insurance practices specifically. IFCA gives a cause of action to a first-party insured against an insurer who "unreasonably denie[s] a claim for coverage or payment of benefits." RCW § 48.30.015(1).[3]

Because the court's analysis of these issues will require it to interpret the Policy, the court reviews the applicable legal principles. In Washington, insurance policy interpretation is a legal question. *Overton*, 38 P.3d at 325 ("Interpretation of insurance policies is a question of law, in which the policy is construed as a whole and each clause is given force and effect."). The court must give the terms of the policy a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Id*. (internal quotation omitted). Terms defined within a policy are to be construed as defined, while undefined terms are given their "ordinary and common meaning, not their technical, legal meaning." *Allstate Ins. Co. v. Peasley*, 932 P.2d 1244, 1246 (Wash. 1997). Dictionaries may assist in determining the ordinary meaning of a term. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990). If policy language on its face is fairly susceptible to two different but reasonable interpretations, ambiguity exists. *Peasley*, 932 P.2d at 1246 (cited in *Petersen-Gonzales v. Garcia*, 86 P.3d 210 (Wash. Ct. App. 2004)); *Allstate Ins. Co. v. Hammonds*, 865 P.2d 560, 562 (Wash. Ct. App. 1994) (ambiguity exists "when, reading the contract as a whole, two reasonable and fair interpretations are possible."). Extrinsic evidence may provide the meaning of an ambiguous term, but only where that evidence shows that both parties to the policy intended a particular meaning. *Am. Nat'l Fire Ins. Co. v. B&L Trucking & Const. Co.*, 951 P.2d 250, 256 (Wash. 1998); *see also Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005) ("If a clause is ambiguous, [a court] may

---

[3] Plaintiffs contend that IFCA provides a cause of action for violation of Washington's insurance regulations. This court has already rejected that contention. *See Yancey v. Auto. Ins. Co. of Hartford*, No. 11-1329RAJ (Dkt. # 68) (Oct. 23, 2012 order at 10-11).

ORDER – 8

rely on extrinsic evidence of the intent of the parties to resolve the ambiguity."). Because parties rarely negotiate the terms of an insurance policy, there is rarely evidence of the parties' mutual intent as to the meaning of a policy term. Where extrinsic evidence does not resolve an ambiguity, the court must construe the ambiguous term in favor of the insured. *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 141 (Wash. 2000); *see also Hammonds*, 865 P.2d at 562 (directing courts to resolve ambiguity against insurer "even where the insurer may have intended another meaning").

### A.   Allstate Had No Duty to Inform Ms. Shahnian of a Potential Loss of Consortium Claim.

Allstate did not violate any law by failing to disclose to Ms. Shahnian that she had a loss of consortium claim. No one contends that the Policy itself obligated Allstate to disclose the possibility of a loss of consortium claim. The parties instead debate whether Allstate's duty of good faith or statutory duties required disclosure about Ms. Shahnian's loss of consortium claim.

An insurer has an obligation to disclose coverages or other policy provisions that might be applicable to an insured's claim. For example, when an unrepresented insured injured in a two-party car accident makes claims for medical expenses under a personal injury protection coverage, the insurer must also disclose the availability of UIM coverage where there is at least a possibility that the other driver was at fault. *Anderson v. State Farm Mut. Ins. Co.*, 2 P.3d 1029, 1034 (Wash. 2000). Both Washington's insurance regulations and the duty of good faith mandate full disclosure of policy benefits. *Id.*; *see also* WAC § 284-30-350(1) (requiring insurer "fully disclose . . . all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented"). Where an insured has a lawyer, the insurer can satisfy its duty to disclose pertinent policy provisions merely by providing the lawyer with a complete copy of the policy. *Nationwide Mut. Fire Ins. Co. v. Watson*, 840 P.2d 851, 859 (Wash. 1992).

ORDER – 9

By contrast, there is no authority for the notion that an insurer has a duty to inform any insured of what legal theories it might invoke to recover damages. Particularly where an insured has his own attorney, an insurer acts reasonably when it provides its policy to the attorney and allows the insured's attorney to make legal judgments. The decision in *Watson*, *supra*, illustrates as much. In *Watson*, the plaintiff was a passenger in a car involved in an accident. The driver's policy made him a beneficiary of the driver's UIM coverage and PIP coverage. *Id.* at 853. He also had his own insurance policy with UIM coverage. The plaintiff reached a settlement with the driver's insurance company in which he released all claims on the driver's policy. *Id.* at 853-54. Later, while pursuing UIM benefits from his own insurance company, he learned that the driver's UIM coverage was primary to his own. *Id.* at 855. He returned to the driver's insurance company to make a UIM claim. *Id.* The court held that because an attorney represented him and the insurance company provided the lawyer with a copy of the policy, the insurance company had fulfilled its duty to disclose all pertinent coverages and policy benefits. *Id.* at 859. The insurance company had no obligation to disclose the possibility that the plaintiff's own UIM coverage would be inapplicable, or to investigate that possibility.

Assuming, for the sake of argument, that there are circumstances where it would be unreasonable to fail to inform an insured of a legal claim she might bring, this case does not present those circumstances. Until April 2011, three and a half years after the accident, Allstate had no indication that Ms. Shahnian intended to make a claim of any kind. There is no evidence that Ms. Shahnian was injured in the accident. The first time that Allstate became aware of facts that might support a loss of consortium claim was in June 2009, when Mr. Tavakoli's lawyer told Allstate that Mr. Tavakoli's relationship with his wife was suffering in the aftermath of the accident. The lawyer did not suggest that Ms. Tavakoli wanted to bring any claim, much less a loss of consortium claim. The

ORDER – 10

court cannot accept Plaintiffs' suggestion that Allstate should have raised the possibility of a legal claim that their own attorney never mentioned. Plaintiffs' arguments would be more appropriate in a malpractice claim against their own lawyer than in a motion claiming that Allstate did something wrong. As the court has already noted in its discussion of *Watson*, the fact that a lawyer represents the insured bears heavily on the reasonableness of the insurer's action. Insurers cannot communicate directly with an insured who has a lawyer. WAC § 284-30-330(19). An insurer satisfies its duty to communicate with its insured by communicating with the insured's lawyer. WAC § 284-30-320(2). Whereas an insurer must inform an unrepresented insured of any contractual limitations periods or statutes of limitation that might affect a claim, that duty does not apply when the insured has a lawyer. WAC § 284-30-380(5).

In this case, Allstate did not, as a matter of law, breach either a contractual or statutory duty by not disclosing the possibility of a loss of consortium claim to Ms. Shahnian. The court also holds that, because Allstate's settlement offers preceded Plaintiffs' lawyer's first disclosure that Ms. Shahnian was bringing a claim, Allstate did nothing wrong by failing to consider loss of consortium when making those settlement offers. The court's resolution of this issue makes it unnecessary to decide whether Ms. Shahnian's failure to pursue damages from Mr. Koehne's insurer means that she is not "uninsured" for purposes of the Allstate Policy's UIM provision. The court also need not decide the impact of Ms. Shahnian's failure to notify Allstate of her claim until at least April 2011. It is also unnecessary to decide whether Mr. Tavakoli's demand of a policy-limits settlement from Allstate means that Ms. Shahnian's loss of consortium claim is superfluous.

Finally, the court holds that that the Policy imposes a single $250,000 limit on the combination of Ms. Shahnian's loss of consortium claim and her husband's claims. This holding is not necessary to the court's disposition of these motions, but Plaintiffs make

ORDER – 11

clear that they intend at trial to claim Ms. Shahnian's damages are subject to a separate limit than her husband's. The Policy imposes a $250,000 "per person" limit on UIM benefits. Wyche Decl. (Dkt. # 37) ¶ 2. The Policy clarifies that the "each person" limit is the "total limit for all damages arising out of *bodily injury* to one person in any one motor vehicle accident." Policy at 16 (emphasis added).[4] There is no evidence or allegation that Ms. Shahnian suffered bodily injury in the accident. Her loss of consortium claim instead arises out of the bodily injuries that Mr. Tavakoli suffered. *Zoda v. Mut. of Enumclaw Ins. Co.*, 684 P.2d 91, 92 (Wash. Ct. App. 1984). Her policy claim, combined with her husband's claim, cannot exceed $250,000.

**B.    A Jury Must Decide Whether Allstate Violated the Law By Declining to Make a Partial Payment of Damages that Were Not Reasonably Disputable.**

The parties debate whether Allstate had an obligation to pay Mr. Tavakoli any undisputed damages in advance of a final resolution of this claim. If, for example, Allstate had agreed that Mr. Tavakoli was entitled to payment of $30,000 in medical expenses, Mr. Tavakoli believes that Allstate had a duty to pay that amount even as Allstate disputed his claims for additional damages. Whether Allstate ever agreed as to any aspect of Mr. Tavakoli's damage claim is a disputed issue of fact that the jury must resolve.[5] Because it is at least possible that Allstate agreed at some point that Mr. Tavakoli was entitled to a particular sum of damages, the court addresses the legal question of whether it had a duty to make a partial payment.

The court finds no merit in Plaintiffs' argument that the Policy itself obligates Allstate to make partial payments. The UIM portion of the Policy states that Allstate

---

[4] The court relies on the version of the Policy at Exhibit A to the Declaration of Tony Wyche (Dkt. # 37), using the numbers at the lower-right-hand corner of each page.

[5] Plaintiffs point to deposition testimony from three of Allstate's claims representatives as evidence that it was "undisputed" that Allstate owed about $30,000 for Mr. Tavakoli's medical expenses. The testimony on which they rely does not provide the court with sufficient context to decide, for purposes of summary judgment, whether the representatives were merely conceding that Mr. Tavakoli had actually incurred medical expenses in that amount as opposed to conceding that it was appropriate for Mr. Tavakoli to incur those expenses.

ORDER – 12

"will pay damages which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle," but it clarifies that the "right to receive *any damages* and the amount of damages will be decided by agreement between the insured person and Allstate" or by a lawsuit to resolve any disagreement. Policy at 14 (emphasis added). The Policy is unambiguous: but for an agreement between Allstate and the insured or the insured's victory in court, Allstate has no duty to pay *any* damages. The Policy does not prohibit Allstate from making partial damage payments by agreement, but it does not obligate Allstate to do so.

The duty of good faith, however, requires an insurer to behave reasonably in executing its contractual duties. If Allstate unreasonably failed to reach an agreement as to an undisputed amount of damages, it breached that duty. To give an extreme hypothetical example, if Allstate and Mr. Tavakoli had agreed that he was entitled to a $50,000 UIM payment to resolve all of his claims, Allstate could not avoid its obligation to pay that amount by insisting that Mr. Tavakoli agree that it could withhold payment for ten years. This case is not an extreme example, it is typical of a UIM claim. The insured has suffered injuries and seeks damages, but the insurer disagrees as to the amount of damages. Some damages (for example, Mr. Tavakoli's past medical expenses) are less debatable than others (for example, Mr. Tavakoli's noneconomic damages), but the existence of debates is at least potentially a reasonable basis for failing to come to an agreement about damages.

The parties admit that no Washington statute, regulation, or binding case authority requires a UIM insurer to make partial payments. The parties cite a variety of out-of-state authority addressing the issue, but that authority relies on statutory and common law obligations that vary by state. Allstate also insists that the common practice of UIM insurers throughout Washington is to decline to make partial payments. Allstate does not

ORDER – 13

explain how the common practice of insurers is relevant to determining what the law requires.

In the court's view, Washington neither mandates partial UIM payments in every case nor permits an insurer to categorically avoid partial payments. To explain that conclusion, the court considers how the duty of good faith applies to an insurer considering an insured's UIM claim. In many circumstances, an insured's duty of good faith requires it to give equal consideration to its own interests and the interests of its insured. *Ellwein v. Hartford Accident & Indem. Co.*, 15 P.3d 640, 646 (Wash. 2001), *overruled in part on other grounds*, *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1278 (Wash. 2003). When considering UIM coverage, however, the insured cannot give equal consideration to all of its insured's interests. *Ellwein*, 15 P.3d at 647. A UIM insurer "stands in the shoes" of the underinsured driver, and can assert any defense to liability that the driver had. *Id.* An insurer cannot give "equal consideration" to its insured's interests while asserting defenses that are antithetical to its insured's interests. *See id.* ("UIM coverage requires that a UIM insurer be free to be adversarial within the confines of the normal rules of procedure and ethics."); *see also Petersen-Gonzales v. Garcia*, 86 P.3d 210, 213 (Wash. Ct. App. 2004) (finding no bad faith where plaintiff's insurer appeared at trial as a third-party defendant in plaintiff's suit against underinsured driver). On the other hand, even though the duty of good faith applies differently in the UIM context, it does not cease to exist. *Ellwein*, 15 P.3d at 547. An insurer must "deal in good faith and fairly *as to the terms of the policy* and not overreach the insured, despite its adversary interest." *Id.* (emphasis added) (quoting *Hendren v. Allstate Ins. Co.*, 672 P.2d 1137, 1141 (N. Mex. Ct. App. 1983)). Thus, while the insurer is free to be adversarial in the context of assuming the uninsured driver's role in response to its insured's claims, it is not free to be adversarial in the context of fulfilling its policy obligations or other duties that apply to it as an insurer. *See Edmonson v. Popchoi*, 228

ORDER – 14

P.3d 780, 785 (Wash. Ct. App. 2010) (stating, in dicta, that duty to conduct timely and reasonable investigation applies in UIM context). Stepping into the shoes of Mr. Koehne, Allstate was entitled to raise legal defenses to liability despite Mr. Tavakoli's adverse interest. But whereas Mr. Koehne could have refused to pay Mr. Tavakoli anything until his claims ended either in a complete settlement or a decision in court, Allstate had separate payment obligations as an insurer. Its duty of good faith, coupled with the language of the Policy, obligated it to behave reasonably in coming to an agreement on what damages it owed Mr. Tavakoli. If a dispute as to whether the uninsured driver had defenses to the insured's claim was the basis of a dispute over what damages Allstate owed, then it would be reasonable not to agree to payment. On the other hand, Allstate acts unreasonably if it refuses to pay damages that it reasonably believes it must eventually pay merely because it has not reached agreement as to other aspects of an insured's damages.[6]

Subject to these principles, a jury must decide whether Allstate acted unreasonably by not making a partial payment to Mr. Tavakoli.

C.  **Allstate is Not Liable for Anything It Did From October 2007 to December 2010.**

No reasonable jury could conclude that Allstate breached the Policy, acted in bad faith, violated the CPA, or violated IFCA from the time of the accident until Mr. Tavakoli's lawyer's initial demand letter in December 2010. As the court detailed in Part II, *supra*, Allstate continually attempted to learn more about Mr. Tavakoli's claim, and Mr. Tavakoli's lawyer continually refused to provide complete information. Instead, the

---

[6] Allstate cited this court's own decision in *Henderson v. Metro. Prop. & Cas. Ins. Co.*, No. 09-1723RAJ, 1010 WL 5394908 (W.D. Wash. Dec. 22, 2010) to support its position that it had no duty to make partial payments. In *Henderson*, the court ruled that a UIM insurer who refused to make a partial payment for allegedly undisputed damages had not violated WAC § 284-30-330(12), a regulation that prohibits an insurer from refusing to settle its liability under one policy coverage in order to influence a settlement under a different coverage. *Id.* at *3-4. The court did not consider whether the refusal to make a partial payment violated the general duty of good faith, whether it was an unreasonable practice, or whether it violated other regulations. *Id.* at *4.

ORDER – 15

lawyer provided snippets of information, repeatedly informing Allstate that it would not receive complete information until he provided a formal demand letter.  If Plaintiffs expected more to be done during the three years following the accident, they have only their lawyer to blame.

### D. Allstate Did not Violate the Law with Respect to Any Lost Wages Claim.

Allstate did not, as a matter of law, violate the law by failing to prompt Mr. Tavakoli to make a claim for lost wages or by failing to investigate that claim.  As early as June 2009, Mr. Tavakoli's lawyer disclosed to Allstate that Mr. Tavakoli's restaurant business was suffering in the wake of the accident.  Allstate asked him to document any business-related expenses, but the lawyer did not.  As was the case with Ms. Shahnian's loss of consortium claim, the lawyer's disclosure of facts that might support a lost wages did not obligate Allstate to do anything.  When the lawyer finally made a demand in December 2010, he did not mention a lost wages claim or any business-related damages.  By then, Allstate had already disclosed a complete copy of its policy to Mr. Tavakoli's lawyer.  It had no further obligations, as a matter of law, to prompt the lawyer to make a lost wages claim.  Again, if Plaintiffs are disappointed that no one raised a lost wages claim sooner, it is their own lawyer they ought to blame.

### E. IFCA Permits an Insured to Recover Damages that an Unreasonable Denial of Policy Benefits Causes, Including Policy Benefits Themselves.

Allstate erroneously contends that IFCA does not permit Plaintiffs to recover Mr. Tavakoli's personal injury damages (and other aspects of his UIM claim).  To explain that conclusion, the court begins by noting that this case is typical in that Plaintiffs seek both the benefits their insurer owes them under their Policy as well as any damages the insurer's claims handling caused.  As is also typical, Plaintiffs assert four legal theories to recover those damages: breach of the insurance policy, bad faith, violation of the CPA, and violation of IFCA.

ORDER – 16

As a matter of law, the damages available in a breach-of-policy claim and a bad faith claim do not overlap. A breach-of-policy claim targets unpaid policy benefits. An insurer liable for bad faith, by contrast, "is not liable for the policy benefits but, instead, liable for the consequential damages to the insured as a result of the insurer's breach of its contractual [duty of good faith] and statutory obligations." *Coventry Assocs. v. Am. States Ins. Co.*, 961 P.2d 933, 939 (Wash. 1998).

IFCA provides yet another way to recover damages. Any first-party insured "who is unreasonably denied a claim for coverage or payment of benefits," can sue to recover "the actual damages sustained . . . ." The actual damages sustained from an "unreasonbl[e] deni[al]" of benefits necessarily include (but are not necessarily limited to) the benefits that were unreasonably denied. Thus, unlike a plaintiff with a bad faith claim, an IFCA claimant can recover policy benefits, subject only to the policy's limit.[7]

Although the court considers these issues in response to Allstate's motion, the record suggests that Plaintiffs also misunderstand the nature of damages flowing from an insurer's violation. For example, Plaintiffs asked the court to rule that Allstate broke the law by not informing Ms. Shahnian of her potential loss of consortium claim. The court has already rejected that proposition. Nonetheless, Plaintiffs failed to articulate how Allstate's alleged failing with respect to the loss of consortium claim has damaged them. Plaintiffs finally asserted a loss of consortium claim nearly four years after the accident, and they will have an opportunity to recover loss of consortium damages at trial. Thus even if Allstate had done something wrong with respect to the loss of consortium claim, Plaintiffs have not pointed to any damage as a result.

The court expects the parties to apply these principles when crafting their jury instructions and verdict form.

---

[7] The court does not suggest that Plaintiffs can recover duplicative damages. If for example, the jury finds that Allstate both breached the Policy and unreasonably denied payment of benefits, the jury verdict form will be structured to identify or avoid any duplicative damage award.

ORDER – 17

## IV. CONCLUSION

For the reasons stated above, the court DENIES Plaintiffs' motion for partial summary judgment (Dkt. # 33) and GRANTS in part and DENIES in part Allstate's motion for partial summary judgment (Dkt. # 35).

Trial will begin on January 28, 2013.

The court notifies the parties that it will bifurcate trial into two consecutive phases to be decided by the same jury. Allstate has already indicated that it hopes to bifurcate trial between a first phase dedicated to determining Plaintiffs' damages arising from the accident and a second phase dedicated to determining Plaintiffs' damages arising from Allstate's claims handling. In two other cases, the court has similarly bifurcated trials arising out of UIM claims, and the procedure has been efficient for both the court and the parties. In this case, the advantages of bifurcated trial are even more evident. Plaintiffs' accident-related damages claims (including Ms. Shahnian's loss of consortium claim) are complex enough without introducing unrelated evidence of claims handling. Moreover, the claims related to Allstate's claims handling are made much more complicated in this case because the only people who interacted with Allstate during claims handling were Plaintiffs' lawyers. Plaintiffs will have to devise a plan for presenting evidence to the jury without violating the prohibition against lawyers appearing as witnesses. Bifurcation will allow the court to avoid this complication at least in the first phase of the trial.

The parties shall submit motions in limine in accordance with Local Rules W.D. Wash. LCR 7(d)(4) and LCR 7(e)(5) no later than January 4, 2013. The court imposes a modified briefing schedule for those motions. Oppositions to the motions are due no later than noon on Friday, January 11. The parties shall note the motions for January 11.

The parties shall file a joint pretrial order in accordance with Local Rules W.D. Wash. LCR 16 and trial briefs no later than noon on January 14, 2013. The parties shall file jury instructions in accordance with Local Rules W.D. Wash. LCR 51 no later than noon on January 21. The parties shall provide trial exhibits in accordance with the

ORDER – 18

court's December 2, 2011 minute order (Dkt. # 9) no later than January 23.  The court has already set a pretrial conference for January 15 at 3:00 p.m.

DATED this 21st day of December, 2012.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 19