The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HOSSEIN TAVAKOLI and
POURANDOK SHAHNIAN, a married
couple, and the marital community
composed thereof,

Plaintiffs,

v.

ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,
an Illinois Company Doing Business in
the State of Washington,

Defendant.

No. 2:11-cv-01587-RAJ

**DEFENDANT ALLSTATE
PROPERTY AND CASUALTY
INSURANCE COMPANY'S
MOTIONS IN LIMINE**

Noting Date: January 11, 2013

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

## I.   RELIEF REQUESTED

Defendant Allstate Property and Casualty Insurance Company ("Allstate") hereby moves, before trial and before selection of the jury, for an order in limine instructing the parties and counsel not to directly or indirectly mention, refer to, interrogate concerning, offer into evidence, or attempt to convey to the jury in any manner any of the facts or arguments set forth below.  Pursuant to Local Rule 7(d)(4), Allstate certifies the undersigned counsel conferred in good faith with Plaintiffs' counsel in an effort to resolve matters in dispute.  The parties were unable to resolve the matters herein through that conference.

## II.   STATEMENT OF FACTS

This case arises out of Plaintiffs' underinsured motorist insurance ("UIM") claim for injuries in an automobile accident that occurred on October 9, 2007, and Allstate's subsequent handling of Plaintiff Tavakoli's claim for UIM benefits.  The Court ruled on December 21, 2012 that trial would be bifurcated, with Phase 1 dedicated to determining Plaintiffs' damages from the accident and Phase 2 determining any liability and damages related to Allstate's claims handling.  The Court also made various summary judgment rulings narrowing the scope of issues in dispute.  *See* Dkt. #63.

## III.   MOTIONS IN LIMINE

### Motion #1: Evidence or Argument Regarding Loss of Consortium and Lost Wages Should Be Excluded from Phase 2.

The Court previously ruled that Allstate did not violate the law or act unreasonably in failing to pay or advise Plaintiffs of potential loss of consortium or lost wage claims prior to this lawsuit.  *See* Dkt. #63 at 11, 16.  While loss of consortium and lost wage damages might be part of Phase 1 as Plaintiffs' overall damages from the accident, they are irrelevant to Phase 2 of trial.  Such evidence

DEFENDANT ALLSTATE'S MOTIONS IN LIMINE
(CASE NO. 2:11-CV-01587-RAJ) - 1
4819-4973-0322.05

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

would also be confusing to the jury and prejudicial to Allstate. Such claims were not made to Allstate prior to litigation, and therefore not part of the valuation or offer challenged by Plaintiffs' extra-contractual claims, which focused only on the physical injuries claimed by Plaintiffs and their counsel prior to the lawsuit. Introducing evidence of loss of consortium and lost wages in Phase 2 needlessly complicates that inquiry and encourages decision on an improper basis.

Accordingly, Plaintiffs should be barred from presenting evidence or argument in Phase 2 of trial regarding: (1) loss of consortium or lost wages, and (2) any damages allegedly flowing from the failure to receive payments from Allstate for loss of consortium or lost wages or income. If Allstate had no duty to advise of, or pay, such claims, it cannot be liable for damages from failure to pay, rendering such evidence or argument irrelevant and prejudicial.

### Motion #2: The Court Should Exclude Any Evidence or Argument Seeking Recovery of Saffron Kabobs' Lost Profits, or Claiming it Closed Because of the Accident.

Plaintiffs both worked at a restaurant named "Saffron Kabobs" at the time of Mr. Tavakoli's accident in 2007. Saffron Kabobs closed in early 2011. Saffron Kabobs was the d/b/a for a limited liability company named Pouri's LLC, which is not a party to this lawsuit. The Court should exclude: (1) all evidence and argument regarding any lost profits or lost business opportunity of Pouri's LLC d/b/a "Saffron Kabobs," (2) all evidence or argument suggesting Mr. Tavakoli's car accident led to the closure of Saffron Kabobs.

1.    *Plaintiffs Cannot Recover for Saffron Kabobs' Lost Profits, Warranting Exclusion of Such Evidence*

Plaintiffs previously suggested they may seek damages for "loss to business" or recovery of lost profits for Saffron Kabobs.[1] But Pouri's LLC is not a

---

[1] Allstate understands from the parties' meet and confer that Plaintiffs do not intend to seek a

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

party to this lawsuit, and it did not assign any claims for lost profits to Plaintiffs.
Even if it had, any such claims would not be covered under the Allstate policy
because Pouri's LLC was not an insured. Accordingly, any evidence or argument
that Plaintiffs are entitled to recover Saffron Kabobs' lost profits, or that it closed
because of Mr. Tavakoli's accident, should be excluded.

That Plaintiffs are members of Pouri's LLC does not authorize them to
recover for its lost profits. It is black-letter law that the members of an LLC cannot
prosecute an LLC's claims in their own name or recover on its behalf. Under
Washington's Limited Liability Companies Act, LLC members have no interest in
the LLC's property. *See* RCW 25.15.245(1) ("A limited liability company interest is
personal property. A member has no interest in specific limited liability company
property."). Therefore, LLC members are not directly injured and have no
standing when the LLC suffers an improper deprivation of LLC property – in this
case, lost profits. *See Woods View II, LLC v. Kitsap Cnty.*, No. 11–35605, 2012
WL 2129390, at *1 (9th Cir. June 13, 2012) (LLC member could not bring
individual claim because personal financial losses were derivative of company's
own losses, and member was not injured directly and independently of the
company); *Real Marketing Servs., LLC v. Protocol Commc'ns, Inc. (In re Real
Marketing Servs., LLC)*, 309 B.R. 783, 788 (Bankr. S.D. Cal. 2004) (holding that
managing member lacked standing to bring claims for damages of LLC), *relied
upon in Finley v. Takisaki*, No. 05–1118, 2006 WL 1169794, at *2–*3 (W.D. Wash.
Apr. 28, 2006) (holding that, under Washington law, LLC members lacked

---

specific dollar figure for lost profits for Saffron Kabobs. However, Plaintiffs appear to intend to
argue the accident led to its closure, and to seek damages flowing from lost business from Saffron
Kabobs. Plaintiffs have also listed Hamid Sharif, the accountant for Pouri's LLC, as a lay witness in
the pretrial order draft exchanged among counsel, stating he may offer testimony "regarding of the
nature and extent of Mr. Tavakoli's injuries, including his loss to his business, loss of business
opportunity and lost wages."

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

standing because their claimed loss derived solely from their membership in the LLC). Having taken advantage of the LLC structure to protect themselves against any liability incurred by the Saffron Kabobs restaurant, Plaintiffs cannot now disregard that structure in an attempt to recover for alleged harm done to the LLC.

2. *Evidence or Argument the Accident Led to Saffron Kabobs' Closure Should be Excluded.*

Plaintiffs should not be allowed to speculate that Mr. Tavakoli's car accident in 2007 or Allstate's handling of his claim led to the closure of Saffron Kabobs in 2011. First, because Plaintiffs are not entitled to prosecute claims on Pouri's behalf and are not entitled to recover for lost profits, evidence or argument about changes in Pouri's business or profits after the accident is irrelevant and unnecessarily creates a large collateral detour. It is also confusing and highly prejudicial because it creates a significant risk the jury will determine any lost income damages using the wrong measure (Saffron Kabobs' profits).

Second, such evidence is the domain of expert testimony.[2] Plaintiffs have not designated an expert witness regarding lost profits or the closure of Saffron Kabobs in 2011. Plaintiffs themselves are not qualified to render such expert opinion, and any such testimony would be improper lay opinion that should be excluded from trial under Fed.R.Evid. 701 and 702. The value of a business and the reason(s) for its failure are the kinds of "technical, or other specialized knowledge" for which expert testimony is appropriate and necessary to assist the trier of fact. Fed.R.Evid. 702. *See, e.g., Lassen Canyon Nursery, Inc. v. Royal*

---

[2] This is particularly true in the economic climate that existed from the time of Plaintiffs' accident in late 2007 to the closure of Saffron Kabobs in early 2011, when, as Mr. Tavakoli admitted in his deposition, economic conditions certainly affected the viability of Saffron Kabobs. *See* Deposition of Hossein Tavakoli ("Tavakoli Dep.") at 19:14–19 ("Q. The downturn in the economy in that time period over the last few years affected the business of Saffron Kabobs? A. Yes. Q. Decreased its revenues? A. Yes. It did not keep up."), attached as Exhibit A to the accompanying Declaration of Gavin W. Skok in Support of Motions in Limine ("Skok Decl.").

DEFENDANT ALLSTATE'S MOTIONS IN LIMINE
(CASE NO. 2:11-CV-01587-RAJ) - 4
4819-4973-0322.05

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

*Ins. Co. of Am.*, 720 F.2d 1016, 1018 (9th Cir. 1983) (reviewing the affidavit of "an expert in the field of business valuation" regarding a business's value and its "total destruction"). Nor does Plaintiffs' knowledge of Saffron Kabobs' revenues qualify them to testify about the economic causes of its failure. *See, e.g., Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 60 (2d Cir. 2002) (affirming district court's exclusion of expert testimony where plaintiff's expert "was not qualified to make an assessment of the cause of the demise of the business. His expertise was limited to calculating the value of the business."); *see also White Lion Van Lines, Inc. v. Palm Beach County Comm'n*, 2006 WL 5100542, 1 (S.D. Fla. 2006) (finding no support for the "position that an accountant may provide expert testimony as to a determination of the cause of a decrease in profitability or business value," and prohibiting the accountant from testifying "as to what actions caused the alleged loss of profitability or business value").

     3.    *Testimony by Lay Witness Hamid Sharif Regarding Business Loss or Lost Profits Should be Excluded*

Plaintiffs' draft pretrial order identified Hamid Sharif, the accountant for Pouri's LLC, as a potential lay witness who may testify "regarding the nature and extent of Mr. Tavakoli's injuries, including his loss to his business, loss of business opportunity and lost wages." For the reasons discussed above, such testimony is the province of experts, not of lay witnesses. Mr. Sharif was not disclosed as an expert, and no Fed.R.Civ.P. 26 report was provided disclosing his opinions. Any testimony about Pouri's LLC's lost profits is similarly irrelevant and prejudicial for the reasons discussed above. Accordingly, Mr. Sharif should not be allowed at trial to (1) offer any testimony about Pouri's LLC d/b/a/ Saffron Kabobs' lost profits, and (2) offer any opinions about the causes of its closure or the effect of the accident on its business.

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

**<u>Motion #3: The Court Should Exclude Certain Evidence and Argument</u>**
**<u>Regarding Plaintiff Tavakoli's Wage Loss and Lost Earning Capacity.</u>**

Plaintiffs seek economic damages for lost income and lost earning capacity from the accident. Evidence of lost income from Mr. Tavakoli's employment after Saffron Kabobs closed in early 2011 was never produced in discovery – despite requests and promises of supplementation – and therefore should be excluded. Evidence or opinion of lost earning capacity should also be excluded, both because of the failure to produce evidence in discovery necessary to show diminished income capacity (evidence of Mr. Tavakoli's current income), and because Plaintiffs' lost earning capacity argument rests on an unreliable and speculative expert opinion that does not consider Mr. Tavakoli's ***actual*** earnings.

       *1.    Evidence of Income Loss After Mr. Tavakoli's Employment at Saffron*
             *Kabobs Should be Excluded*

Plaintiffs sold their interest in Saffron Kabobs in early 2011, approximately 3½ years after his car accident. Plaintiff then went to work at two car dealerships as a car salesman. Plaintiff claims he can no longer work in the restaurant industry. He seeks recovery from Allstate for both past and future income losses, apparently based on the differential between his current earnings as a car salesman and his earnings while working at Saffron Kabobs.

Plaintiff has never produced any evidence of his current earnings as a car salesman, or any earnings after Saffron Kabobs closed in March 2011. Allstate requested a description and quantification of Plaintiffs' alleged loss of income damages in discovery. Plaintiff did not describe the alleged loss of income (e.g., how it was calculated, over what time period, what was his current income, etc.), but instead simply said:

> As a result [sic] Mr. Tavakoli's inability to continue to operate his family business, Saffron Kabobs, the income of Mr. Tavakoli and Ms. Pourandok significantly decreased. The amount of this loss is

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

currently unknown, and Plaintiffs will supplement their answer as warranted.

*See* Plaintiffs' Response to Allstate's Interrogatory No. 9, Skok Decl., Ex. B to Skok Decl. But Plaintiff never supplemented that answer to provide any information about the purported decrease to his income, such as his current income (which remains unknown) or the amount of the loss. Skok Decl. at ¶ 3.

Similarly, Allstate's Request for Production No. 13 asked Plaintiff for production of all documents that relate to, establish or calculate his damages. *See* Skok Decl., Ex. B at 24. Plaintiff did not produce any documents about his lost income in response. Skok Decl. at ¶ 3. He later supplemented and produced a handful of pages of profit and loss statements from Pouri's LLC and an expert report regarding lost earning capacity (that did not include any information about his actual earnings), but never produced documents showing his actual income or any lost income damages after selling Saffron Kabobs in early 2011. Skok Decl. at ¶ 4 & Ex. C (Plaintiffs' 2nd Supp. Resp. to Allstate's 1st Discovery Requests).

As of the date of these motions, Plaintiffs have not specified their lost income damages, produced documents to establish them, or supplemented their Rule 26(a) disclosures with any specification or computation of such damages, despite acknowledging their obligation to do so. Skok Decl. at ¶ 5. Nor have Plaintiffs provided any documents showing Mr. Tavakoli's income after Saffron Kabobs closed in early 2011, nor supplemented their interrogatory answers to provide that information. *Id.* As a result, his income since leaving Saffron Kabobs in early 2011 is unknown. *Id.* Accordingly, Plaintiffs should be barred at trial for presenting any evidence of lost income due to the accident.[3]

---

[3] Plaintiffs should not be allowed to "back door" this evidence through the expert testimony of John Fountaine. Mr. Fountaine testified at his deposition that he had no documentary evidence of Mr. Tavakoli's earnings after Saffron Kabobs, and did not confirm them; instead, he simply relied on Mr. Tavakoli's vague, verbal self-reporting of his current earnings as "$10 per hour." Fountain Dep. at

DEFENDANT ALLSTATE'S MOTIONS IN LIMINE
(CASE NO. 2:11-CV-01587-RAJ) - 7
4819-4973-0322.05

Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

2.  *Evidence and Opinion Regarding Lost Earning Capacity Should be Excluded*

Plaintiffs intend to offer expert testimony at trial from John Fountaine, a vocational rehabilitation counselor, who will opine that Mr. Tavakoli's earning capacity was impaired as a result of the car accident. Mr. Fountaine's Rule 26 report discloses that he intends to offer the opinion that prior to the accident, the median wage under the Washington Occupational Information Systems ("WOIS") classifications for a restaurant manager – $77,592 annually – "is likely a good representation of Mr. Tavakoli's pre-injury wage earning capacity." Fountaine Report at 4, Ex. D to Skok Decl. Mr. Fountaine then compares that figure to Mr. Tavakoli's actual current earnings to arrive at an amount of future lost wages "in the range of $250,000 to $500,000 over his remaining work life expectancy." *Id.*

First, such opinions should be excluded because Plaintiffs have failed to produce evidence of Mr. Tavakoli's actual current earnings, rendering it impossible for Allstate to adequately challenge Mr. Fountaine's opinions comparing current earnings to Mr. Tavakoli's "potential" earning capacity.

Second, Mr. Fountaine's opinions should be excluded because they are based on speculation, not reality. They entirely ignore the reality of Plaintiff's prior earnings, which do not even come close to the WOIS median wage for restaurant managers. Prior to Saffron Kabobs, Mr. Tavakoli had a history of working minimum wage jobs in the service industry (with the exception of a brief stint in

---

51:16-25, Skok Decl., Ex. E. Mr. Fountaine's only "knowledge" of Mr. Tavakoli's current earnings are hearsay statements from Mr. Tavakoli, which were neither documented or confirmed in any way to Mr. Fountaine nor provided to Allstate in discovery. While evidence need not necessarily be admissible for an expert to rely on it, Plaintiffs' failure to produce any evidence in discovery of Mr. Tavakoli's current earnings or income after early 2011 makes it impossible for Allstate to effectively cross-examine Mr. Fountaine on any testimony he provides about Mr. Tavakoli's current earnings, to Allstate's great prejudice. Nor is there any way for the jury to test the veracity of any statements by Mr. Fountaine based on Mr. Tavakoli's verbal estimate of his earnings, effectively putting Mr. Tavakoli's vague assertions about his current earnings beyond testing or refutation.

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

1 real estate at the height of the market in 2006).[4]  During his years at Saffron

2 Kabobs, Plaintiffs' tax returns illustrate that *together* the two Plaintiffs never had

3 combined income from their restaurant jobs exceeding $50,000.  Mr. Fountaine

4 admitted in his deposition that he did not consider how much Mr. Tavakoli was

5 earning at Saffron Kabobs, or even what Saffron Kabobs itself was earning.

6 Fountaine Dep. at 28:3-20, Skok Decl., Ex. E.  Nor did he consider whether Mr.

7 Tavakoli's actual past earnings were more or less than the WOIS median wage for

8 restaurant managers.  *Id.* at 29:17-20.

9     Lost earning capacity is "the permanent diminution" of the plaintiff's ability

10 to earn money.  *Murray v. Mossman*, 52 Wash.2d 885, 889-90, 329 P.2d 1089

11 (1958); *Kubista v. Romaine*, 14 Wash. App. 58, 63, 538 P.2d 812 (1975).  For a

12 court to instruct the jury on lost earning capacity, the evidence must show with

13 reasonable certainty that the plaintiff "has suffered an impairment in his ability to

14 make a living." *Bartlett v. Hantover*, 9 Wash. App. 614, 620, 513 P.2d 844 (1973),

15 *aff'd in part, rev'd in part on other grounds*, 84 Wash.2d 426, 526 P.2d 1217

16 (1974).  Evidence of lost earning capacity is sufficient "if it affords a reasonable

17 basis for estimating loss and does not subject the trier of fact to mere speculation

18 or conjecture." *Clayton v. Wilson*, 168 Wash.2d 57, 72, 227 P.3d 278 (2010).

19     Mr. Fountaine's opinions do not provide a reasonable basis for determining

20 lost earning capacity because they entirely ignore Mr. Tavakoli's earnings history,

21 i.e., the use he made of his purported capacity.  The Washington Supreme Court

22 has clearly stated that the measure of damages for lost earning capacity "is the

23 difference between the earning capacity before and after the accident, and this

24 depends not only on the actual earning capacity, but on the use made of it." *Cook*

25 ——————————————

26 [4] Mr. Tavakoli's only restaurant work experience prior to Saffron Kabobs was working at McDonalds for a couple years in the late 1990s.  Tavakoli Dep. at 16:2-9, Skok Decl., Ex. A.

DEFENDANT ALLSTATE'S MOTIONS IN LIMINE
(CASE NO. 2:11-CV-01587-RAJ) - 9
4819-4973-0322.05

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

1    *v. Danaher Lumber Co.*, 61 Wash. 118, 124, 112 P. 245 (1910). Mr. Tavakoli

2    never earned anywhere close to his purported pre-accident capacity, and

3    Fountaine has no foundation to testify that Mr. Tavakoli could actually have

4    earned up to that capacity or intended to go into that line of work.

5         The Court should exclude Mr. Fountaine's opinions and any other argument

6    or evidence of lost earning capacity, and limit evidence of any economic loss to

7    such evidence of past lost wages as was properly disclosed in discovery.

8    **Motion #4: Plaintiffs Should Be Prohibited from Arguing or Presenting
9    Evidence of Allstate's Post-Litigation Conduct in Support of Their
     Extra-Contractual Claims.**

10        Plaintiffs' extra-contractual claims, as narrowed by the Court in its summary

11   judgment rulings (Dkt. #63), will focus on Allstate's conduct after receiving Mr.

12   Tavakoli's demand for payment under his UIM policy in December 2010. Allstate

13   made settlement offers in February and March 2011, which Plaintiffs intend to

14   challenge as unreasonable. The Complaint in this matter was filed on August 18,

15   2011. Plaintiffs should be barred from arguing or presenting evidence at trial of

16   Allstate's claim handling after the Complaint was filed as proof of their extra-

17   contractual claims.[5]

18        Post-litigation conduct cannot form the basis for extra-contractual claims,

19   as numerous authorities have recognized. *See, e.g., Bronsink v. Allied Prop. &

20   Cas. Ins. Co.*, 2010 WL 2342538, *2 ("[S]ince Plaintiffs filed their suit before a

21   coverage determination had been reached, they clearly cannot avail themselves of

22   [IFCA] on this basis."). Courts in this District have directly addressed this issue

23

24   _____

25   [5] For example, Plaintiffs may attempt to argue that Allstate is liable for bad faith for post-litigation
     conduct related to their loss of consortium claims (e.g., not paying those claims as soon as they

26   were made), which were raised for the first time in litigation, or may argue that Allstate acted in bad
     faith by not tendering payment of policy limits during litigation.

DEFENDANT ALLSTATE'S MOTIONS IN LIMINE
(CASE NO. 2:11-CV-01587-RAJ) - 10
4819-4973-0322.05

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

and explicitly held that the rules of civil procedure, not the WACs, govern an insurer's litigation conduct:

> This Court cannot accept Plaintiffs' formulation of a claims process separate from this litigation process. First, the litigation process in this Court is governed by the Federal Rules of Civil Procedure, which provide clear instructions on how opposing parties are to exchange information relevant to the legal dispute.... When Plaintiffs filed this action, they effectively halted any claims settlement process and subjected themselves to the rules governing litigation.

*Stegall v. Hartford Underwriters Ins. Co.*, 2009 WL 54237, *2-3 (W.D. Wash. 2009) (Pechman, J.) (dismissing bad faith claims based on post-litigation conduct). *See also Southridge P'ship v. Aspen Specialty Ins. Co.*, 2009 WL 1175627 at *5 (W.D. Wash. May 1, 2009) (Coughenour, J.) ("The Court finds the reasoning of *Stegall* applicable and persuasive here. The letters of August 19, 2008 and October 20, 2008, were communications between counsel regarding matters that were inextricably part of the ongoing litigation concerning the contested insurance claim.")

Washington courts have also recognized that basic principle in the UIM context. *See Ellwein v. Hartford Acc. and Indem. Co.*, 142 Wash.2d 766, 780-81 (2001), *overruled in part on other grounds by Smith v. Safeco*, 150 Wash.2d 478, 78 P. 3d 1274 (2003) ("UIM coverage requires that a UIM insurer be free to be adversarial within the confines of the normal rules of procedure and ethics. To require otherwise would contradict the very nature of UIM coverage.").[6]

---

[6] Numerous other courts agree. *See, e.g., Helms v. Nationwide Ins. Co. of Am.*, 280 F.R.D. 354, 361-62 (S.D. Ohio 2012) (collecting cases and recognizing there is "substantial authority for the principle that post-litigation conduct by counsel generally does not—as a matter of law—support a claim of bad faith against an insurer"); *Roesler v. TIG Ins. Co.*, 251 Fed. Appx. 489, 498, 2007 WL 2981366, *8 (10th Cir. 2007) ("The duty of good faith and fair dealing exists during the time the claim is being reviewed. Once a lawsuit is filed, to hold an insurer's acceptable litigation tactics as evidence of bad faith would be to deny the insurer a complete defense.").

DEFENDANT ALLSTATE'S MOTIONS IN LIMINE
(CASE NO. 2:11-CV-01587-RAJ) - 11
4819-4973-0322.05

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Litigation activities are also protected by the judicial action privilege or litigation privilege, and cannot form a basis for a cause of action themselves. *See Jeckle v. Crotty*, 120 Wash. App. 374, 386, 85 P.3d 931 (2004) (*citing McNeil v. Allen*, 95 Wash.2d 265, 267, 621 P.2d 1285 (1980). *Jeckle* affirmed the dismissal of several causes of action based solely on litigation conduct in a separate case against the plaintiff, holding that attorneys and law firms have absolute immunity from liability for acts arising out of representation. *Jeckle*, 120 Wash. App. at 386. Other jurisdictions agree. *See, e.g., Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 376-79 (7th Cir. 2010).

Plaintiffs should be precluded from offering any evidence or argument in Phase 2 that Allstate's conduct after litigation began is probative of Plaintiffs' claims for bad faith or violation of the CPA or IFCA.

### Motion #5: Robert Dietz's General Testimony Regarding Colossus Should be Excluded.

The Court previously ruled Plaintiff's claims-handling expert, Robert Dietz, is not qualified to testify about Allstate's use of Colossus or about "the validity of the output that Colossus generated for Mr. Tavakoli's claim." Dkt. #64 at 3. In light of those rulings, there is simply no need for Mr. Dietz to testify about Colossus at all, and substantial risk of prejudice to Allstate if he does so.

The Court concluded that although Mr. Dietz had no foundation to talk about Allstate's use of Colossus, he had foundation to discuss his own personal use of the program approximately 10 years ago at a different insurance company and to testify about anything he learned while working as an expert regarding the use of Colossus by insurers other than Allstate. *Id.* Allstate understands Plaintiffs intend to offer such general testimony at trial.

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

Any testimony from Mr. Dietz about Colossus generally or how other insurers use that program will omit a vital link: Whether Allstate's version and use of Colossus is the same or different than that of other insurers. Mr. Dietz cannot opine about that. Yet his testimony will encourage the jury to infer Allstate uses the same version of Colossus as other insurers, and uses it in the same way as other insurers, effectively back-dooring the same opinions the Court just excluded, to Allstate's substantial prejudice.[7] At best, Mr. Dietz's testimony about Colossus generally or as used by other insurers will simply waste time, because he cannot establish the connection to the issues in dispute regarding Allstate; at worst, it will confuse the jury and prejudice Allstate as outlined above. All testimony from Mr. Dietz regarding Colossus should be excluded.

### Motion #6: Plaintiffs Should be Barred from Offering Evidence or Testimony Describing the Law or Allstate's Legal Duties

It is well settled that the existence of a duty is a question of law. *First Interstate Bank of Ariz. v. Murphy, Weir & Butler*, 210 F.3d 983, 986 (9th Cir. 2000). Since the existence and nature of a duty is unavoidably a question of law, no witness, expert or otherwise, is permitted to testify about it. "It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." *Marx & Co. v. Diner's Club*, 55 F.2d 505, 509-10 (2d Cir. 1977); *see also Nationwide Transport Finance v. Cass Info. Sys., Inc.* 523 F.3d 1051, 1058 (9th Cir. 2008) ("[I]nstructing the jury as to the applicable law is the distinct and

---

[7] As one example, the Court should exclude advertising material from Computer Sciences Corporation, the company that designed the Colossus software that Allstate uses to evaluate claims for benefits, including Plaintiff Tavakoli's claim in this matter. Plaintiffs may try to introduce such material in an attempt to argue Colossus was marketed to help insurers reduce payments of benefits, and thus to somehow impute those motives to Allstate. But Mr. Dietz does not have any foundation or basis for imputing such motives to Allstate, and he can provide nothing but speculation that Allstate used Colossus in this matter for any other reason except the impartial and objective evaluation of Plaintiff Tavakoli's claim. Such marketing material is wholly irrelevant and prejudicial, lacks foundation, and should be excluded.

DEFENDANT ALLSTATE'S MOTIONS IN LIMINE
(CASE NO. 2:11-CV-01587-RAJ) - 13
4819-4973-0322.05

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

1  exclusive province of the court.")(*quoting Hangarter v. Provident Life & Accident*

2  *Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)); *G.F. Co. v. Pan Ocean Shipping*

3  *Co., Ltd*, 23 F.3d 1498, 1507 n.6 (9th Cir. 1994). The problem with testimony

4  about the law is that at best it duplicates, and at worst it contradicts, the Court's

5  instructions. "[I]t would be a waste of time if witnesses or counsel should

6  duplicate the judge's statement of the law, and it would intolerably confound the

7  jury to have it stated differently." *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir.

8  1988); *see also Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) ("[I]f an

9  expert witness were to testify to legal questions, each party would find an expert

10  who would state the law in the light most favorable to its position. Such differing

11  opinions as to what the law is would only confuse the jury.")

12      Here, at least one of Plaintiffs' proposed experts has submitted reports and

13  given opinions regarding the law or legal duties at issue in this case. As the Court

14  noted, Plaintiffs' claims handling expert (Robert Dietz) couched many of his

15  opinions in terms of duties or legal requirements. Dkt. #64 at 3 ("The Court's

16  review of Mr. Dietz's report raises serious concerns that Mr. Dietz hopes to instruct

17  the jury on the law regarding insurance claims, usurping the Court's role. This

18  Court has often granted motions to exclude the testimony of insurance claims

19  experts for this reason.")

20      For example, instead of simply discussing industry custom and practice,

21  Mr. Dietz's opinions about Allstate's claims handling in many instances go far

22  beyond – improperly – to opine on the ultimate legal issues or expound on

23  Allstate's legal duties. Such opinions infringe on the province of the Court and

24  should be excluded. *See Washington State Physicians Ins. Exchange & Ass'n v.*

25  *Fisons Corp.*, 122 Wash.2d 299, 344, 858 P.2d 1054 (1993) ("Legal opinions on

26  the ultimate legal issue before the court are not properly considered under the

DEFENDANT ALLSTATE'S MOTIONS IN LIMINE
(CASE NO. 2:11-CV-01587-RAJ) - 14
4819-4973-0322.05

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

guise of expert testimony."); *Orion Corp. v. State*, 103 Wash.2d 441, 461, 693

P.2d 1369 (1985) ("Experts are not to state opinions of law.").  *See also Sowell v.*

*United States*, 198 F.3d 169, 171-72 (5th Cir. 1999) (expert could testify about

general standards of conduct of a fiduciary, but was barred from testifying whether

fiduciaries in this case acted reasonably or answering hypothetical questions

concerning what a reasonable fiduciary would do when confronted with facts

identical to those in the case because such testimony would impermissibly convey

to the jury a legal conclusion on the issue of "reasonable cause").[8]

    The Court should exclude any evidence or testimony by Plaintiffs' experts

that purports to describe the law or legal duties of Allstate in this action.

### Motion #7: Dr. Seroussi Should Not Be Permitted to Testify as to the Psychiatric Impact of the Automobile Accident on Plaintiff Tavakoli or His Brain Injury.

    As the Court noted in its Order regarding the parties' motions to strike

experts (Dkt. #64 at 2), Plaintiffs intend to call ten medical experts in Phase 1

regarding Plaintiffs' alleged injuries.  Some of Plaintiffs' treating physicians

(including his proffered spinal expert, Dr. Seroussi) have opined as to the

psychiatric/psychological impact of the subject automobile accident upon Mr.

Tavakoli.  No individual other than a physician properly qualified under

Fed.R.Evid. 702 as possessing medical training in the field of psychiatry should be

permitted to offer such opinions, and should be precluded from doing so.

---

[8] In particular, Mr. Dietz should be precluded from offering opinions that any specific statute or regulations apply or that Allstate's conduct violated such statute or regulation, including WAC Ch. 284-30.  Opining that a defendant violated a statute or WAC is a legal conclusion that is not the proper subject of expert testimony.  *See, e.g., Hyatt v. Sellen Constr.*, 40 Wash. App. 893, 899, 700 P.2d 1164 (1985) (affirming trial court's exclusion of expert opinion that certain statutes and regulations applied to defendant's construction project, what such statutes and regulations required and that defendant had violated those standards).

DEFENDANT ALLSTATE'S MOTIONS IN LIMINE
(CASE NO. 2:11-CV-01587-RAJ) - 15
4819-4973-0322.05

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

Further, Dr. Seroussi is not qualified to opine as to any aspect of Plaintiff Tavakoli's brain injury, though his reports indicate he is likely to testify on that topic.  Dr. Seroussi is an orthopedist, who recognized his own lack of knowledge in the fields of psychiatry and brain injury by referring Plaintiff Tavakoli to specialists in those fields, Drs. Comert and Schiff.  Dr. Seroussi could provide no testimony regarding Plaintiff Tavakoli's brain injury except a repetition of information he received from those specialists, without any independent skill, knowledge, or qualification of his own.  Such testimony would thus be cumulative, of no assistance to the jury, and prejudicial to Allstate.[9]

## Motion #8: Plaintiffs Evidence of Other Claims, Lawsuits, Complaints or Regulatory Actions Against Allstate Should be Excluded.

Evidence of whether Allstate is involved in other claims, lawsuits or regulatory proceedings, or whether complaints have been filed against Allstate with insurance regulators, has no relevance to the facts of this particular case, and risks turning trial into a series of collateral detours about other unrelated matters instead of focusing on the issues at hand.  Such evidence also suggests decision on an improper basis, and is therefore properly excluded under Fed.R.Evid. 403. "Decision on an improper basis" may occur under a variety of circumstances, including instances where negative inferences of a defendant's character may result.  *See, e.g., Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 886 (9th Cir. 2002) (exclusion of evidence was not an abuse of discretion where "a jury may have concluded [the plaintiff was] a person of bad character and viewed his actions and testimony in this case with unwarranted suspicion").  Any evidence or argument about allegations of wrongdoing against Allstate that are not within the

---

[9] *See also* Karl Tegland, Washington Practice: Evidence Law and Practice § 702.17 at 80 (5th ed. 2007) ("An expert's testimony may be excluded if it simply reiterates factual testimony already given by other witnesses.").

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

context of Plaintiffs' specific claims in this action – including other claims, lawsuits, or regulatory actions Allstate – should be excluded.

### Motion #9: Plaintiffs Should Be Prohibited from Comparing Their Financial Status to Allstate or Encouraging the Jury to Punish Allstate.

Evidence or argument contrasting Plaintiffs' financial status to that of Allstate is unfairly prejudicial, irrelevant, and unhelpful to the jury's determination of the issues in dispute. Reference to the wealth or poverty of a party, or contrasting parties' disparate financial statuses, is improper:

> [A]rgument referring to the wealth or poverty of a party, or contrasting the financial status of one party with that of the other, is ordinarily improper, unless relevant to some issue properly in the case, the theory being that jurors have a tendency to favor the poor against the rich, and if provoked by such inflammatory argument are likely to apply the size of the verdict to the financial ability of the party who is to pay for it.

32 A.L.R.2d 8, 17. Accordingly, any argument that Plaintiffs are entitled to treble or other damages should not include reference to Plaintiffs' financial status, or Allstate's ability to pay a verdict of any size.

Similarly, the Court should prohibit Plaintiffs from any attempt to put the insurance industry as a whole on trial in this matter by encouraging the jury to punish Allstate or the industry. Plaintiffs should similarly be barred from presenting argument or testimony that imputes to Allstate the actions or motives of other insurers or the insurance industry as a whole. This case involves discreet issues related only to Plaintiff Tavakoli's injuries and Allstate's handling of his claim for benefits. Any larger policy argument regarding the general conduct of Allstate or other insurance companies is irrelevant under Fed.R.Evid. 402, unduly prejudicial under Fed.R.Evid. 403, and should be excluded accordingly.

### Motion #10: Preclude Argument Related to "Confidentiality" Stamp on Documents.

DEFENDANT ALLSTATE'S MOTIONS IN LIMINE
(CASE NO. 2:11-CV-01587-RAJ) - 17
4819-4973-0322.05

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

1   Certain documents and trial exhibits that may be shown to the jury or
2   entered into evidence in this case were stamped "Confidential" at the time of
3   production in litigation, or which had privileged information redacted (and are
4   stamped "Redacted" where such information was removed).  Counsel should be
5   prohibited from arguing or suggesting, or attempting to elicit testimony that
6   marking a document "Confidential," or redacting privileged information and
7   stamping "Redacted," is improper or is evidence of, or leads to inference that, a
8   party deliberately withheld or sought to cover up knowledge or information of the
9   facts alleged in this matter.[10]

10   The use of "Confidential" or "Redacted" stamps (or other words to the same
11   effect) is common to protect privileged, proprietary or sensitive business or
12   commercial information produced in litigation.  The civil rules acknowledge as
13   much by the provision for protective orders to preserve the confidentiality of such
14   material.  Comments, examination, argument or suggestion regarding the
15   designation of any document as "Confidential" should be prohibited for any
16   purpose as it would be irrelevant and highly prejudicial under Rules 402 and 403.

17                              IV.   CONCLUSION

18   For the foregoing reasons, the Court should enter an order in limine
19   instructing the parties and counsel not to directly or indirectly mention, refer to,
20   interrogate concerning, offer into evidence, or attempt to convey to the jury in any
21   manner any of the facts or arguments set forth above.

22

---

23   [10] There is a real and substantial risk Plaintiffs will make such arguments at trial.  For example,
     Plaintiffs' exhibit list includes a copy of Allstate's claim diary for Mr. Tavakoli's claim that was
24   produced at the outset of this case and includes various redactions for attorney-client and work
     product material.  Allstate subsequently agreed to not assert work product over pre-litigation entries
25   on the claim diary, and produced another copy of the claim diary without any redactions for work
     product.  Yet instead of using the unredacted version of the claim diary as a trial exhibit, Plaintiffs
26   listed the redacted version as a trial exhibit, setting up the arguments addressed by this motion.

DEFENDANT ALLSTATE'S MOTIONS IN LIMINE
(CASE NO. 2:11-CV-01587-RAJ) - 18
4819-4973-0322.05

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

DATED this 4th day of January, 2013.

RIDDELL WILLIAMS P.S.


By s/ *Gavin W. Skok*
    Gavin W. Skok, WSBA #29766
    gskok@riddellwilliams.com


By s/ *Blake Marks-Dias*
    Blake Marks-Dias, WSBA # 28169
    bmarksdias@riddellwilliams.com

    Attorneys for Defendant
    Allstate Property and Casualty Insurance
    Company

DEFENDANT ALLSTATE'S MOTIONS IN LIMINE
(CASE NO. 2:11-CV-01587-RAJ) - 19
4819-4973-0322.05

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date written below, a true and correct copy of the foregoing document was served on the following attorneys, by the means indicated:

| Service List | |
|---|---|
| Kyle C. Olive, WSBA #35552<br>Timothy A. Bearb, WSBA #39300<br>Olive Bearb PLLC<br>1218 3rd Avenue, Suite 100<br>Seattle, WA 98101<br>Tel: 206-629-9909<br>Fax: 206-971-5081<br>Email: kyle@olivebearb.com<br>Email: timothy@olivebearb.com<br><br>*Attorneys for Plaintiffs* | ☐ U.S. Mail<br>☐ By Facsimile<br>☐ By Messenger<br>☐ By Federal Express<br>☒ Via CM/ECF<br>☐ Via Email |
| Leonard Semenea, WSBA #35327<br>Kristian E. Soholm, WSBA #30535<br>10845 Main Street<br>Bellevue, WA 98004<br>Tel: 425 688 1108<br>Fax: 425 688 1106<br>Email: semenealaw@gmail.com<br><br>*Attorneys for Plaintiffs* | ☐ U.S. Mail<br>☐ By Facsimile<br>☐ By Messenger<br>☐ By Federal Express<br>☒ Via CM/ECF<br>☐ Via Email |

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct and that this declaration was executed on the 4th day of January, 2013, at Seattle, Washington.

Jan Sherred

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600