HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HOSSEIN TAVAKOLI, et al.,

    Plaintiff,

    v.

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,

    Defendant.

CASE NO. C11-1587RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on the parties' motions in limine. Dkt. ## 67, 69. The court GRANTS both motions in part and DENIES both motions in part. As the court's local rules require, Plaintiffs Hossein Tavakoli and Pourandok Shahnian and Defendant Allstate Property and Casualty Insurance Company ("Allstate") each filed a single motion in limine. Local Rules W.D. Wash. LCR 7(d)(4). Each motion is divided into several parts, which the court addresses below.

This case follows Mr. Tavakoli's October 2007 car accident. Plaintiffs assert causes of action invoking the uninsured motorist ("UIM") coverage of their Allstate insurance policy, as well as causes of action based on Allstate's handling of their insurance claim. The court addressed these causes of action in a December 21, 2012 order resolving the parties' summary judgment motions. Dkt. # 63. The court will not repeat the factual summary or analysis from that order except as necessary. Among other

ORDER – 1

things, that order separated the trial of Plaintiffs' claims into a first phase devoted solely to assessing their damages arising from the accident and a second phase to determine whether Allstate is liable for any damages arising from its claims handling.

## II.  PLAINTIFF'S MOTION IN LIMINE

**Part One**

Plaintiffs ask the court to prohibit William Partin, an accountant, from testifying at trial.  Mr. Partin intends to offer expert testimony to rebut the testimony of John Fountaine, a vocational rehabilitation expert who will testify on Mr. Tavakoli's behalf regarding his loss of future income as a result of the accident.

Plaintiffs' first objection is a reprise of objections that the court put to rest in an order addressing the parties' first motions to exclude witnesses.  That order (Dkt. # 64) explained that both parties conducted discovery and issued expert reports well after the deadlines the court imposed and that both parties were to blame for the late disclosures.  As was the case in that order, there is no need to parse who is responsible for each late disclosure.  Unless a party can point to prejudice arising from the late disclosure, the court will not exclude it.  There is no prejudice arising from the timing of the disclosure of Mr. Partin's testimony.

Mr. Fountaine will offer testimony about Mr. Tavakoli's loss of wage-earning capacity by comparing his wage-earning capacity before the accident and after.  As everyone recognizes, Mr. Tavakoli's *capacity* to earn wages is at best a part of an assessment of his past or future lost wages.  The extent to which would be able to fulfill his earning potential matters as well.  Mr. Partin intends to offer testimony that Mr. Tavakoli would not have fulfilled that potential.  Among other things, he will opine that Mr. Tavakoli never met his earning potential before the accident, and that health problems unrelated to the accident will prevent him from meeting his earning potential in the future.  This is appropriate rebuttal testimony.  Mr. Partin is qualified to assess how

ORDER – 2

different assumptions about Mr. Tavakoli's maximization of his earning capacity will affect the calculations of his lost earnings. To the extent those assumptions depend on medical evidence or vocational evidence that is outside his field of expertise, he may still rely on that evidence. Mr. Partin may not, however, offer his own opinions or assessments about occupations for which Mr. Tavakoli is or is not qualified. Mr. Partin is an accountant, not a vocational specialist. He may not opine, for example, about what level of restaurant service work Mr. Tavakoli is qualified for. He also may not opine about whether Mr. Tavakoli is currently qualified to work as a realtor.

**Part Two**

Plaintiffs want to prevent Allstate from offering evidence, during the first phase of trial, that Mr. Tavakoli hired a lawyer just days after the October 2007 accident. They contend that evidence is irrelevant. Allstate contends, however, that Mr. Tavakoli's medical treatment and other actions in the aftermath of the accident were driven by a desire to maximize his recovery in a lawsuit.

Allstate may offer evidence about Mr. Tavakoli's decision to hire a lawyer. And, to the extent it has *admissible* evidence, it may develop the theory that he sought unnecessary medical treatment or took other steps because of the possibility of litigation. The court cautions Allstate, however, that it may not inquire into Mr. Tavakoli's communications with his counsel. The court will not prohibit Allstate from offering evidence about Mr. Tavakoli's hiring of counsel, but it may, on proper objection, limit such evidence if Allstate chooses to belabor it.

**Part Three**

The court has already ruled that Allstate did not violate the law during the time between the 2007 accident and Plaintiffs' attorney's first demand letter in December 2010. Now Plaintiffs ask the court to exclude (from phase two of the trial) all evidence relating to claims handling during that period.

ORDER – 3

The court denies this request. It will be impossible for the jury to understand Allstate's claims handling after December 2010 without at least a basic understanding of what had happened over the more than three years prior to December 2010. For example, Plaintiffs intend to argue that Allstate's investigation was unreasonably delayed. In light of that argument, the jury will likely be curious as to why Allstate did little for more than three years after the accident. Allstate is entitled to present evidence that it did little because Plaintiffs' attorney refused to provide information and repeatedly told Allstate to wait for a demand letter. Although the court may limit evidence regarding pre-December-2010 claims handling if either party spends too much time presenting it, it will not bar the evidence.

**Part Four**

Plaintiffs hope to introduce evidence about their contractual relationship with Allstate during the first phase of the trial. That will be unnecessary. The court will inform the jury before trial begins that Allstate is a defendant in this action because Plaintiffs' claim relies on their UIM coverage, and that in a UIM claim the insurance company stands in the place of the uninsured motorist. The court will tell the jury that Allstate concedes liability for the accident, but disputes the amount of damages. The jury does not need to know anything else about the contractual relationship between the parties to reach a verdict in phase one. In particular, Plaintiffs may not attempt to argue that a lawsuit is the "only way" to resolve disputes over UIM coverage.

**Part Five**

Plaintiffs demand that the jury decide whether or not to treble any damages it awards based on the Insurance Fair Conduct Act ("IFCA"). In another case, the court recently ruled that the Seventh Amendment requires the jury in federal court to decide whether to enhance IFCA damages in accordance with RCW § 48.30.015(2), even though the Washington legislature intended that the trial court decide whether to enhance

ORDER – 4

damages. *F.C. Bloxom Co. v. Fireman's Fund Ins. Co.*, No. C10-1603RAJ, 2012 U.S. Dist. LEXIS 170543, at *17 (W.D. Wash. Nov. 30, 2012). Plaintiffs want the court to reach the same conclusion in this case. Allstate opposes the request, preferring that the court decide whether to enhance IFCA damages.

Although the court is likely to follow its prior order, Allstate has raised at least one argument that the court did not consider in that prior order. Accordingly, the court reserves ruling on whether it or the jury will resolve the enhanced damages issue. Nonetheless, the court will take the jury's verdict on enhanced damages. If the court ultimately adopts Allstate's view that the court should decide enhanced damages, it will treat the jury's verdict as advisory. *See* Fed. R. Civ. P. 39(c).

### III.  DEFENDANT'S MOTION IN LIMINE

**Part One**

Allstate asks the court to exclude evidence related to Ms. Shahnian's loss of consortium claim from phase two of the trial. The court denies that request, but may limit testimony on that issue if it becomes repetitive.

The jury will have decided whether Ms. Shahnian is entitled to loss of consortium damages during phase one of the trial. There are at least two issues in the second phase, however, to which those damages might again be relevant. The first is Plaintiff's contention that Allstate broke the law by refusing to make a partial payment of damages that were not reasonably in dispute. The second issue is related: Plaintiffs intend to argue that they suffered additional damages because Allstate's failure to pay left them unable to afford medical care and unable to keep Mr. Tavakoli's restaurant business open.

Plaintiffs may refer to their phase one damages as necessary to make the arguments the court has just identified. Plaintiffs will have already presented all evidence regarding those damages in phase one. The only evidence regarding those issues that ought to arise in phase two is evidence that some portion of those damages were

ORDER – 5

undisputed, and evidence that Allstate knew or should have known that Plaintiffs were suffering additional damages because of Allstate's failure to make a partial payment.

The court's ruling that Allstate did not violate the law prior to December 2010 applies here as well. Plaintiffs may not argue that they suffered extracontractual damages prior to December 2010.

**Part Two**

Allstate requests that the court exclude evidence of the effect of the accident on the restaurant that Mr. Tavakoli helped operate. It appears that, at the time of the accident, Mr. Tavakoli was a member of a limited liability company that operated a small restaurant called "Saffron Kabobs." Mr. Tavakoli also worked at the restaurant. The record is murky, but it appears that the LLC had members other than Mr. Tavakoli. Mr. Tavakoli intends to present evidence that because of his injuries, he could not work enough at the restaurant, the restaurant became less profitable, and it ultimately closed.

The limited liability company is not a party to this action, and Mr. Tavakoli cannot recover the company's lost profits. He can, however, present evidence that he received or expected to receive all or a portion of the company's profits in the form of wages or other compensation. To that extent, evidence of the company's financial performance is relevant, and the court will not exclude it.

The court also denies Allstate's request to exclude testimony from the company's accountant, Hamid Sharif. Mr. Sharif may provide testimony within his personal knowledge about the company's finances. He also may testify about Mr. Tavakoli's injuries and their effect on the business, as long as he has personal knowledge on those topics.

**Part Three**

Allstate contends that Mr. Tavakoli did not disclose evidence describing his wage history after Saffron Kabobs closed in March 2011, and thus should not be permitted to

ORDER – 6

offer such evidence to support his claim for lost wages and future loss of wages. Allstate claims that Mr. Tavakoli provided only a generic response to an interrogatory requesting information on his lost income claim and did not provide documents about his post-March-2011 income in response to a request for production.

Allstate's description of the discovery Mr. Tavakoli provided is at best inexcusably forgetful and at worst an effort to mislead the court. Mr. Tavakoli provided the discovery responses that Allstate cited in July of 2012. Allstate neglects to mention that it deposed Mr. Tavakoli at the end of July and he described his post-March-2011 employment, wages, and financial status in considerable detail. Allstate further neglects to mention that Mr. Tavakoli updated his initial disclosures in August to reflect his most recent employment. And as a final omission, Allstate does not reveal that Mr. Tavakoli provided all of his tax returns from 2005 through 2011. Allstate has no basis for its claim that Mr. Tavakoli did not adequately disclose evidence about his income and financial status after March 2011.

The court also denies Allstate's request to exclude Mr. Fountaine's testimony. He has the expertise to assess (in reliance on medical evidence and other evidence pertaining to Mr. Tavakoli's physical and mental capabilities) what occupations Mr. Tavakoli is qualified for and will be qualified for. He also has the expertise to assess his earning capacity. The court has already explained that Mr. Tavakoli's earning capacity is only part of the assessment of his lost past and future wages, but it is nonetheless relevant. The court will not exclude it.

**Part Four**

Allstate argues that its conduct after Plaintiffs filed this lawsuit in August 2011 is not relevant to Plaintiffs' extracontractual claims. The court disagrees. In a case like this one, where the insured's claim remains open, the insured's decision to sue its insurer does not cut off the insurer's obligations to adjust the claim. The litigation itself will impose

ORDER – 7

new demands on the insurer, and if there were a conflict between the demands of litigation and the insurer's duty to adjust the claim, the court might have to decide how to resolve it.[1]  Allstate has not identified any specific conflict in its motion.

**Part Five**

Allstate already filed a separate motion asking the court to limit the testimony of Robert Dietz, who intends to offer expert testimony on Plaintiff's behalf regarding the insurance industry.  The court issued a separate ruling on that motion.  In part five of its motion in limine, Allstate asks the court to limit his testimony further.  The court declines to consider a second motion on the topic.  The court reiterates its prior ruling.

**Part Six**

Allstate asks for a blanket ruling excluding evidence that purports to explain Allstate's legal obligations.  The court cannot grant that request.  During the second phase of the trial, it is likely that some witnesses will testify as to their understanding of what the law requires of Allstate.  That is likely unavoidable.  If necessary, the court will give the jury a limiting instruction during trial that the court will instruct them as to Allstate's legal obligations at the conclusion of trial, and that the court's instructions will govern over any conflicting evidence.  If either party wishes to avoid an in-trial limiting instruction, they should not elicit testimony from witnesses as to their understanding of the law.

---

[1] For example, the court in *Stegall v. Hartford Underwriters Ins. Co.*, No. C08-688MJP, 2009 U.S. Dist. LEXIS 2690, *3-7 (W.D. Wash. Jan. 7, 2009) addressed whether Washington insurance regulations requiring prompt responses to inquiries from insureds applied to an insured's counsel's inquiry to the insurer's counsel during litigation.  In that case, the insurer had already paid its insured and closed its file before the insured sued. *Id.* at *2-3.  The *Stegall* court had no occasion to consider a case like this one, where the insurer has neither made a payment nor informed its insured that it has concluded its adjustment of the claim.  The court does not interpret *Stegall* to impose a broad rule that an insurer cannot be liable for unlawful claims handling after its insured sues.

ORDER – 8

**Part Seven**

The court denies Allstate's request to prevent Dr. Richard Seroussi from testifying regarding the psychiatric impact of Mr. Tavakoli's injuries or testifying about his brain injuries. Dr. Seroussi is neither a psychiatrist nor a neurologist, but his experience in the field of physiatry touches on both disciplines. If his opinions go beyond his expertise, Allstate can illustrate as much in cross-examination. The court observes that Allstate has already indicated that it intends to have its expert orthopedist testify regarding the psychiatric aspects of Mr. Tavakoli's claimed injuries, putting Allstate in a poor position to complain that one of Mr. Tavakoli's medical witnesses may testify as to matters somewhat outside the core of his specialty.

**Part Eight**

The court grants Allstate's request to exclude evidence of other claims, lawsuits, or the like. The jury will decide the second phase of this case based solely on Allstate's conduct with respect to Plaintiffs' claims.

**Part Nine**

The court grants Allstate's request to prohibit Plaintiffs' from offering evidence of Allstate's relative wealth, or their relative poverty, as a reason to enhance damages. Allstate's wealth is not relevant at all, and Plaintiffs' wealth is relevant only to the extent it bears on their inability to pay for medical care or other issues that are germane to their claims for compensatory damages.

The court does not, however, prohibit Plaintiffs from arguing that the jury should enhance any IFCA damages it awards in order to punish Allstate. So long as that argument relates solely to Allstate's conduct toward Plaintiffs, the court will not prohibit it.

**Part Ten**

The court grants Allstate's request to exclude any evidence or argument related to Allstate's decision to designate certain documents as "confidential" during discovery.

ORDER – 9

Those decisions relate solely to Allstate's litigation conduct, and are not relevant to any of Plaintiffs' claims.

### IV.  CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part the parties' motions in limine. Dkt. ## 67, 69.

DATED this 15th day of January, 2013.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 10